O'Toole, Appellant, *v.* Braddock Borough.

Argued September 28, 1959. Before BELL, MUS-MANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*George S. Goldstein,* with him *Allen S. Gordon,* and *Sidney J. Sable,* for appellants.

*Francis A. Muracca,* Borough Solicitor, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 25, 1959:

Mrs. Mary O'Toole and her husband, Thomas O'Toole brought suit against the Borough of Braddock, alleging the borough was negligent in its maintenance of a sidewalk at the corner of Fifth and Maple Streets and that, because of an alleged defect in the sidewalk at that point, Mrs. O'Toole fell and was injured. The jury returned a verdict for the defendant and the plaintiffs appealed, urging various errors on the part of the Trial Judge.

In charging the jury, the Judge said: "The burden of proof is on the plaintiff to establish her right of recovery and the amount of the recovery, and if the plaintiff is unable to do that satisfactorily, the verdict must be for the defendant."

This instruction was erroneous, since it supplied the jury with no measurement as to the burden of proof imposed on the plaintiff. It is axiomatic that the criterion of satisfaction varies considerably, according to the thinking of the individual who is to be satisfied. What might be completely satisfactory to one person could be irritation to another.

The law is specific and long ago established that the plaintiff in a civil action has the burden of proof, a burden which must be met by *a preponderance of the evidence*. When the jury finds that the pan on the plaintiff's side of the scales of justice has descended below the horizontal, while the defendant's dish has risen above the level plane, the plaintiff has met his burden, and the jury is required to return a verdict in favor of the plaintiff. *Se-Ling Hosiery Co. v. Margulies*, 364 Pa. 45.

The Trial Judge also erred when he charged the jury: "A hole or obstruction or anything of that kind in a sidewalk which is not more than an inch and a half or two inches in depth, I believe, is not enough to fix responsibility upon the municipality. If it is a larger hole or a deeper hole, then it is enough. Whether that applies to an angle iron which goes around the corner of the curbline, I think the courts have not spoken upon that matter, and we will leave that up to you."

The depth of a hole or the size of an obstruction which constitutes tortious impediment has not been measured by the law, and obviously cannot be measured on a permanent basis, because the alleged negligence in any given case must depend upon the particular circumstances in controversy. A trial judge should not specify to the jury the exact number of inches, below or above which negligence attaches or disengages. The criterion to be submitted is the care which any proprietor or municipality must exercise in order to save innocent passersby from harm.

It is also error for a trial court to tell a jury that it should make law. When the Judge, speaking of the angle iron feature in the case, said to the jury that "the Courts have not spoken upon that matter, and we will leave that up to you," he was making of the jury a supreme court or a miniature legislature. Even assuming the unlikely hypothesis that a jury could fortuitously be composed of persons sufficiently grounded in law to engage in the creation of jurisprudence, they still would have no authority under the constitution to do so. If a judge is not adequately familiar with the subject of the law on which he is to charge the jury, he should blow away the dust from the books in his library and find the appertaining authoritative rule, or, if he has no time to do this, lay under contribution the learning of the attorneys in the case and, from trial briefs requested and submitted, locate the channel of deliberation into which the jury may be guided in reaching the port of an acceptable verdict.

The Trial Court charged: "Now, if she [the plaintiff] went along with her eyes in the sky or not looking, and she tripped on something that was visible and which she might have seen. If that be the case, she is not entitled, under our system of law, to recover."

There is no evidence in the case to support the inference that the plaintiff had her eyes in the sky. A trial judge must not conjure up imaginative situations which reflect adversely on either party, because there is always the possibility that the jury may take the judicially invented hypothesis as a factual foundation upon which to build a verdict which will then rest on airy fantasy rather than on evidence.

Not only is there nothing in the record to justify the "sky-gazing" hypothesis, but the plaintiff definitely testified to an earth-studying preoccupation as she traversed the area in question: "Q. Were you looking where you were going, Mary? A. Yes, I was. Q. Why

didn't you see it, if you were looking where you were going? A. It was covered with leaves and dirt."

It is not necessary to dwell on the other errors ascribed to the charge. However, reference may be made to cases which correctly state the law on the remaining subjects involved in the appeal: *Roslik v. Pittsburgh*, 155 Pa. Superior Ct. 607; *Heimbach v. Peltz*, 384 Pa. 308.

The judgment of the court below is reversed with a venire facias de novo.

Mr. Justice BENJAMIN R. JONES and Mr. Justice COHEN concur in the result.