Commonwealth *v.* Butler, Appellant.

Argued March 17, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Edmund G. J. Dale,* for appellant.

*Thomas M. Reed,* Assistant District Attorney, with him *Michael von Moschzisker,* First Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY RHODES, P. J., July 17, 1952:

Appellant, Frank J. Butler, was adjudged in contempt by Judge EDWIN O. LEWIS of the Court of Quarter Sessions of Philadelphia County, and sentenced to serve six months in the county prison.

Appellant had been called before a special grand jury (March, 1951) which was investigating bribery and corrupt solicitation in Philadelphia County. It had been directed to investigate conditions within the county relating to an alliance said to exist between police and other public officials and criminals engaged

in the operation of lotteries and other forms of gambling, such relationship being maintained through bribery and corrupt solicitation. Appellant was sworn in open court by Judge LEWIS who had charged the grand jury.

In testifying before the grand jury, appellant refused to answer any questions beyond stating that he was formerly a member of the police force.[1] The transcript of the proceedings disclosed that, when asked the date he was separated from the police force, he replied, "I refuse to answer that," and then continued by saying, "I refuse [to answer] any questions you ask me." The reason he assigned for this action was that he was out of the police department, and consequently he had no duty to testify. Appellant was then brought before Judge LEWIS who was advised of the exact questions that appellant had refused to answer. The ques-

---

[1] The interrogation in which appellant refused to answer before the grand jury is as follows:

"Q. . . . You were sworn in in open court by Judge EDWIN O. LEWIS. You were a member of the Bureau of Police?

"A. That's right.

"Q. When were you separated from the Bureau?

"A. I refuse to answer that.

"Q. You refuse to answer? Let me—

"A. I refuse any questions you ask me. I am out of the Police Department.

"Q. In other words, you will refuse to answer any questions, regardless of the nature or character of the question, is that correct?

"A. That's right.

"Q. If I should go on and ask you specific questions, would you refuse to—

"A. I refuse any questions you ask me. I am out of the Police Department and I don't feel as though I have to testify.

"Q. In other words, you feel that now that you are out of the Police Department, you do not have to answer any questions at all?

"A. I don't feel that way. I ain't going to answer."

tions and answers were read to the court by the official stenographer. Appellant's counsel, who was present, informed the court that he had advised his client to answer all proper questions that he might be asked in the investigation. Appellant, in response to the court's inquiry as to his attitude, stated that he persisted in his refusal to answer any questions. It thus appears from the record that the court was advised of appellant's contumacy before the grand jury; that appellant refused in open court to answer any questions, or to testify in connection with the investigation, although given an opportunity; that thereupon the court adjudged him in contempt and imposed sentence.

The objections which appellant has raised to the action of the court below are numerous but without merit.[2] We are able to find no legal justification for appellant's conduct. In the first place, appellant did not claim or rely upon the privilege against self-incrimination afforded in Article I, §9, of the Constitution of Pennsylvania. This privilege is personal and may be waived by the failure to assert it. *Rogers v. United States*, 340 U. S. 367, 371, 71 S. Ct. 438, 441, 95 L. Ed. 344, 348; *Com. v. Bolger*, 229 Pa. 597, 79 A. 113; *Com. v. Tracey*, 137 Pa. Superior Ct. 221, 224, 8 A. 2d 622; *Com. v. Cavanaugh*, 159 Pa. Superior Ct. 113, 119, 46 A. 2d 579; *Com. v. Frank*, 159 Pa. Superior Ct. 271, 48 A. 2d 10.

There is no suggestion in appellant's brief and argument that the grand jury investigation did not relate to charges of bribery and corrupt solicitation as outlined in the court's instructions. His argument that the instructions broadened the scope of the inquiry so as to remove it from Article III, §32, of the Constitution will be considered later. Article III, §32, of the

---

[2] As to review on appeal, see *Schlesinger Petition*, 367 Pa. 476, 480, 481, 81 A. 2d 316.

Constitution provides as follows: "Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offence of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony, and any person convicted of either of the offences aforesaid shall, as part of the punishment therefor, be disqualified from holding any office or position of honor, trust or profit in this Commonwealth." It is sufficient to state without further discussion that, under Article III, §32, appellant could be compelled to testify in a grand jury investigation involving bribery and corrupt solicitation; and that he would be given protection to the extent provided by this constitutional provision. *Com. v. Cameron*, 229 Pa. 592, 79 A. 169.

Appellant's contention that he could not be compelled to testify because the scope of the grand jury investigation was not restricted to the charges of bribery and corrupt solicitation is not supported by the record. The court's charge to the grand jury clearly marks the scope of the inquiry and confines it to bribery and corrupt solicitation, whereby there may have been secured and maintained an unlawful alliance between police and other officials and those engaged in various forms of gambling in the City of Philadelphia. It was proper for Judge Lewis in his charge to refer to the ramifications of such a relationship, as the offense of bribery employed in Article III, §32, is not limited but includes all bribery whether at common law, under a statute or under the Constitution itself. *Com. v. Bell*, 145 Pa. 374, 391, 22 A. 641. In this connection we again point out that, regardless of the scope of the in-

vestigation, appellant did not at any time claim the privilege against self-incrimination. Moreover, he was represented by counsel who had conferred with him at length before he was called before the grand jury; and his counsel was present when he was brought before the court, instructed to answer the questions asked, and adjudged in contempt for his refusal.

The argument that appellant was a defendant when he was called before the grand jury as a witness, and was therefore justified in his refusal to testify, is difficult to follow. Obtuse reasoning cannot make appellant a defendant because of the remarks of the assistant district attorney after he had been adjudged in contempt. The fact that appellant at some later time might be made a defendant in a criminal proceeding growing out of the investigation furnishes no justification for his refusal to testify before the investigating grand jury. See *Com. v. Bolger,* supra, 229 Pa. 597, 79 A. 113; *Com. v. Rhey,* 140 Pa. Superior Ct. 340, 345, 14 A. 2d 192. The assistant district attorney's statements to the effect that appellant was "part of a corrupt pattern" and "has a corrupt motive" were made after appellant had been adjudged in contempt and after sentence had been imposed. Such remarks did not invalidate in any way the judgment of contempt. It does not appear from the record and it has not been asserted by appellant that he was a defendant in any action, or that he had been charged with any offense. In any event, if appellant had claimed the privilege against self-incrimination he would have been protected only to the extent provided in Article III, §32. See *Com. v. Frank,* supra, 159 Pa. Superior Ct. 271, 48 A. 2d 10; *Com. v. Richardson,* 229 Pa. 609, 616, 79 A. 222.

Courts have certain inherent powers which are necessary to permit them to function and to assure their continued existence. The power to punish for con-

tempt is a power necessary to protect them from insult and enforce obedience to their process. *Williamson's Case,* 26 Pa. 9, 18; *In re Contempt of Myers and Brei,* 83 Pa. Superior Ct. 383, 387. In this Commonwealth the manner of the exercise of the right to punish for contempt is regulated by the Act of June 16, 1836, P. L. 784, 17 PS §2041. *Marks' Appeal,* 144 Pa. Superior Ct. 556, 563, 20 A. 2d 242. The grand jury is an arm of the criminal court (*McNair's Petition,* 324 Pa. 48, 58, 187 A. 498; *Shenker v. Harr,* 332 Pa. 382, 387, 2 A. 2d 298) ; and in *Camarota v. United States,* 3 Cir., 111 F. 2d 243, 246, it was held that proceedings before the grand jury are to be regarded as proceedings in the court, and that contempts occurring in the presence of the grand jury are to be treated as taking place in the presence of the court or so near thereto as to obstruct the administration of justice. When witnesses before a grand jury refuse to testify they may be brought before the court, compelled to testify and sentenced for contempt upon refusal to answer proper questions put to them. *Hale v. Henkel,* 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652. See *In re Oliver,* 333 U. S. 257, 265, 277, 68 S. Ct. 499, 503, 510, 92 L. Ed. 682, 690, 696; *Hoffman v. United States,* 341 U. S. 479, 482, 71 S. Ct. 814, 816, 95 L. Ed. 1118, 1122. Thus when a witness refuses to testify before a grand jury, notwithstanding statutory immunity or constitutional protection, is brought before the court, is directed to answer on proper notice and refuses in open court to answer proper questions, a criminal contempt is committed in the presence of the court which may be punished summarily. *Camarota v. United States,* supra, 3 Cir., 111 F. 2d 243; *United States v. Weinberg,* 2 Cir., 65 F. 2d 394. Cf. *Kelly's Contested Election,* 200 Pa. 430, 50 A. 248.

In support of his argument that he could not be punished summarily for his conduct, appellant relies

upon the following quotation from *Cooke v. United States,* 267 U. S. 517, 537, 45 S. Ct. 390, 395, 69 L. Ed. 767, 774, in *Com. v. Sheasley,* 102 Pa. Superior Ct. 384, 390, 391, 157 A. 27, 29: " 'Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation.' " The *Sheasley* case furnishes no support to any phase of appellant's argument. Appellant's contumacious act was repeated in open court, where he directly flouted the authority of the court and acted in a manner that was a direct interference with the administration of justice. See *Com. v. Bell,* supra, 145 Pa. 374, 388, 22 A. 641. In the present case there were no factual issues raised which required a hearing as in the *Sheasley* case. There was no necessity for the court to order appellant to return to the grand jury to answer the questions; this would have been a useless act. Appellant had persisted in his refusal to answer any questions regardless of their nature or character. We think appellant was afforded every consideration and all the rights to which a defendant in a contempt proceeding is entitled. *Camarota v. United States,* supra, 3 Cir., 111 F. 2d 243, 246.

There remains only appellant's contention that his contempt, if any, was civil rather than criminal contempt. On this subject no discussion is necessary in the face of the facts. The broad distinction between civil and criminal contempts is set forth in *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania,* 114 Pa. Superior Ct. 7, 12, 13, 174 A. 11, affirmed 318 Pa. 401, 178 A. 291. The contempt being criminal and the sentence punitive, the subsequent discharge of the grand jury did not invalidate the judgment of contempt or render moot the question of appellant's compliance with the sentence.

Judgment and sentence are affirmed, and the record is remitted to the court below, and it is ordered that the defendant, Frank J. Butler, appear in the court below at such time as he may there be called, to the end that the sentence of the court for contempt be fully executed.